IN RE ESTATE OF RICKIE ROBERTS.

W. J. SNOOK, Appellant, v. JESSIE RITTER, Executrix, Appellee.

No. 45217.

APRIL 7, 1942.

V. H. Morgan, E. N. Farber, and R. A. Rockhill, for appellant.

F. E. Northup, for appellee.

MITCHELL, J.—This is a claim in probate against the executrix of the Rickie Roberts estate, for judgment on a certain promissory note. There was attached to the claim a copy of the note, which showed that it was dated April 20, 1937, that it was due April 20, 1940, that it was in the amount of $7,500, drawing 6 per cent interest, and that there was due on the note at the date same was filed interest in the sum of $500, making a total amount for which the claim was filed in the amount of $8,000. That the note was payable to Floyd Roberts. That it was indorsed by the said Floyd Roberts, and that it is now the property of W. J. Snook, the claimant.

Jessie Ritter, executrix of the estate of Rickie Roberts, deceased, filed an answer in separate divisions which are as follows:

## "DIVISION ONE

"That the said alleged promissory note is a false and forged instrument, and of no validity whatsoever.

## "DIVISION TWO

"That the said Claimant is not the holder thereof, for value, in due course before maturity, and without notice of its infirmities.

## "DIVISION THREE

"That said alleged promissory note was not given by the said Rickie Roberts as the evidence of a debt or valid obligation, in that, at the time of the alleged execution thereof, said Floyd Roberts named as the payee therein was himself heavily indebted to said Rickie Roberts, and had not so conducted himself towards said Rickie Roberts, his mother, as to merit a gift of such amount or any amount whatsoever.

"That if the same was intended as a gift it was without consideration and not collectible in the hands of Floyd Roberts, and the Claimant knew, or should have known such facts in the exercise of reasonable diligence.

## "DIVISION FOUR

"That the Claimant was not acting in good faith in pretending to be the indorsee for value of said alleged note, but was acting fraudulently and in collusion with the said Floyd Roberts in pretending to be the indorsee for value before maturity, and in filing said note as a claim in said estate, intending thereby to collect a note, that in the hands of Floyd Roberts would have been invalid, and which would have been subject to just offsets and counterclaim.

"That said Floyd Roberts, and not the Claimant, is in fact, the real party in interest.

## "DIVISION FIVE

"That said Rickie Roberts, died prior to the alleged transfer of said promissory note to Claimant, and the same, if genuine, became and was a provable claim against said estate, even before the arrival of the maturity date upon the face thereof, and that by reason thereof the Claimant can not support the

claim that his alleged acquisition thereof was for value in due course and before maturity.

"That by reason of the fact that said alleged promissory note, was provable upon the death of Rickie Roberts, and the further fact that she was dead at the time of the transfer, rendered it subject to all just claims owing by payee to the Executrix herein, as the legal representative of decedent.

"That also there existed such a defective spelling of the name Rickie Roberts, as to have put Claimant on inquiry.

"That he paid no adequate consideration for same, if any consideration whatsoever was in fact given.

## "Division Six

"The Executrix herein denies each and every allegation made in said claim and not herein admitted."

Claimant filed a reply to the answer, in which he denied generally and specifically each and every allegation contained in said answer, except that he admitted Jessie Ritter was the executrix of the estate of Rickie Roberts, and that he was the holder in due course of the note at the time he filed his claim against the estate.

There was a trial at which a great deal of evidence was offered, and at the close of the evidence and after both parties had rested, claimant moved to withdraw from the consideration of the jury the issues tendered by division 3 of defendant's answer, and also moved to withdraw from the consideration of the jury the issue tendered by that part of division 5 of defendant's answer which related to a claimed defect in the spelling of the name Rickie Roberts on the instrument sued on, for the reason that the record showed without dispute that she sometimes spelled her name Rickie and sometimes Ricke. This motion was sustained by the trial court. Claimant further moved to withdraw from the consideration of the jury the issue tendered by division 4 of defendant's answer which related to the good faith of the claimant in his transactions with Floyd Roberts whereby the note was transferred to the claimant; and he further moved to withdraw from the consideration of the jury all issues tendered by defendant's answer on the question of whether or not the claimant purchased said note and was the

holder in due course, for the reason that the law presumed the claimant to be a holder in due course until the contrary was shown, and the proof having shown that the note in suit was not a gift by the maker to the payee, Floyd Roberts, and said note not having been given without consideration, therefore, consideration was presumed in the transfer and delivery of the note by the payee, Floyd Roberts, to the claimant, and there was no evidence in the record to sustain the issue of fraud and collusion as made by defendant in her answer, and that unless the fact of forgery was found, the note was collectible by the claimant; and he further moved the court to properly and adequately instruct the jury that all such issues were withdrawn from the consideration of the jury. The trial court sustained this motion.

This left only one of the pleaded defenses, to wit, whether or not the instrument sued on was a forged instrument. This was the sole question presented to the jury, which returned a verdict in favor of the estate, and the claimant, W. J. Snook, being dissatisfied, has appealed to this court.

Before we discuss the errors alleged, we shall briefly review the facts. Rickie Roberts was the mother of nine children, all of age at the time of her death. She was the owner of 158 acres of land in the southwestern part of Marshall county, upon which she lived. Floyd Roberts was her youngest son. He operated the farm for his mother. Later he married, but the mother continued to live with Floyd up until the time of her death, which was caused by injuries she received in a tornado which destroyed or damaged practically all of the buildings on the farm.

It is the claim of the appellant that Milton Wright, a man of about the age of 30 years and who had been employed as a dairyman around Newton, became acquainted with Rickie Roberts in the year 1932. The acquaintanceship was due to the fact that he was a friend of Floyd Roberts. He visited at the Roberts home occasionally, not to see Rickie Roberts, but to see Floyd and his wife. On the evening of April 20, 1937, according to the story of Milton Wright, he went to the Roberts home to see Floyd. This was after the dinner hour. Floyd left the

room, for some reason not shown in the record, and Mrs. Rickie Roberts, the mother of Floyd, who had a separate apartment in this house, came into the room where Wright was talking with Floyd's wife, and asked him to go into her apartment. He obeyed and, according to his testimony, when they arrived in the apartment she produced a blank note and told him to fill out the note in the amount of $7,500, payable to Floyd Roberts, and drawing the rate of interest of 6 per cent, and due in three years. That he prepared the note, which was identified by him as Exhibit N. That in his presence Mrs. Rickie Roberts signed the note, using her own pen, and that she retained the note. That he never again saw the note. That after the making out of the note he left the apartment and the Roberts home. There is evidence that the note thereafter was delivered to Floyd Roberts.

It is the claim of the appellant that in April 1938, he was the owner of a certain formula for the making of an antifreeze solution to be used in automobiles and tractors to prevent water from freezing during cold weather, which sold under the trade name of Monarch Antifreeze. That he sold to Floyd Roberts a one-eighth interest in this formula for the sum of $7,500, and that in payment for same Floyd Roberts indorsed the note known in this record as Exhibit N, being the $7,500 note signed by Rickie Roberts, and delivered same to the claimant W. J. Snook.

There is a great deal of evidence in the record in regard to this antifreeze solution and to the value of the formula. The basis upon which the one-eighth interest was sold was that the formula was worth $75,000. Floyd Roberts himself testified to the purchase of the one-eighth interest in the formula and that in payment for the same he indorsed and delivered the note of Rickie Roberts in the amount of $7,500. Floyd testified that the formula was torn in two. He was given one part and Snook retained the other.

There was evidence offered on both sides in regard to whether or not the signature on Exhibit N was the signature of Rickie Roberts or whether it was a forgery. This will be referred to later in the opinion.

██ Appellant argues the court erred in giving instruction

No. 1, in which the court set out certain of the defenses set forth in the answer, which defenses, on motion of the appellant, were withdrawn from the consideration of the jury. Appellant cites the case of Swanson v. Allen, 108 Iowa 419, 421, 79 N. W. 132, in which this court said:

"Nothing is of greater importance in a jury trial than that the court shall make clear and certain to the jurors the very issues they are to determine. Ordinarily those required to serve are unaccustomed to the duties devolving upon them, and are likely to become confused by the mass of conflicting evidence and the illimitable arguments of counsel. The very purpose of instructing them is to make plain the issues they are to try, and the rules of law by which the evidence is to be examined and applied. * * * Copying the pleadings into the instructions as a statement of the issues is subject to the same criticism as the use of the originals, if the jury are permitted to take these upon retirement for deliberation."

Also the case of Disalvo v. Chicago, R. I. & P. R. Co., 199 Iowa 868, 874, 200 N. W. 729, 731, 202 N. W. 608:

"We have tolerated the practice if and when the trial court follows such recital of unproved allegations with an express withdrawal of those that are not sustained by the evidence. The better practice is that unsupported allegations should not be submitted to the jury, even in a statement of issues. If, however, the trial court prefers to include in a statement of issues all the allegations of a pleading, then there ought to be an express and affirmative withdrawal of all allegations which are without support in the evidence."

With the rule of law laid down in these two cases in mind, we turn to the record to ascertain the facts. Instruction No. 1, which is complained of, sets up in a brief and concise manner most of the defenses which were originally pleaded by the estate as a defense to this claim. In the instruction is then set forth the reply filed by the claimant. Following this is instruction No. 2. We quote same:

"INSTRUCTION No. 2

"You are instructed that all issues in this case presented by the pleadings are withdrawn from the consideration of the

jury except the issue as to whether the signature of Ricke Roberts on the promissory note in suit, which is in evidence before you as Exhibit 'N', is the true signature of the said Ricke Roberts or whether said signature is a forged signature.

"As to this issue the burden of proof is upon the defendant."

In instruction No. 2 the court specifically withdrew from the consideration of the jury all issues in the case presented by the pleadings except the issue as to whether the signature of Rickie Roberts on the promissory note in suit was a true signature or whether said signature was a forgery. There could be no doubt in the mind of anyone, it seems to us, but that instruction No. 2 limits the issue to the question of whether or not the signature of Rickie Roberts was a forged signature.

The court, however, again, in instruction No. 4, states:

"The only affirmative defense charged and relied upon by the Executrix of the Rickie Roberts Estate against the claimant, W. J. Snook, and submitted to you is, that the signature affixed to said note is not the genuine signature of the said Rickie Roberts, but that said signature is a forgery."

Again we find the court specifically stating to the jury that the only defense was the question of whether the signature was genuine or a forgery. Certainly, the court in the instructions followed the direction of this court in the case of Disalvo v. Chicago, R. I. & P. R. Co., 199 Iowa 868, 874, 200 N. W. 729, 731, 202 N. W. 608, when we said:

"If, however, the trial court prefers to include in a statement of issues all the allegations of a pleading, then there ought to be an express and affirmative withdrawal of all allegations which are without support in the evidence."

In the case at bar there is an express and affirmative withdrawal, clearly and concisely stated. The appellant made certain motions to withdraw the issues tendered by certain divisions of the answer. At the conclusion of the motion and as part of the motion, appellant used this language. We quote:

"And plaintiff asks that the jury be instructed by the Court

properly and adequately in relation to the withdrawal of the above mentioned and described issues from their consideration.''

The motion was sustained, and the court, following such request, recited the issues in a short and concise manner; then, in language that was easy to understand, definitely proceeded to withdraw each and every issue except that of forgery. We can come to no other conclusion than that instruction No. 2 would remove from the mind of the jury the evidence in the record on other issues, and could convey to the jury no other thought than that they were limited to the single issue—deciding whether or not the signature on Exhibit N was a forgery.

The appellant complains that the court failed to properly instruct the jury on the burden of proof. The court, in instruction No. 2, placed the burden of proof upon the appellee. In instruction No. 4 the court instructed as to the preponderance of the evidence and defined that term correctly in instruction No. 3.

The appellant argues that the verdict of the jury was contrary to the weight and value of the evidence as to the issue of whether or not the signature of Rickie Roberts on Exhibit N was a genuine or a forged signature and that the verdict of the jury that such signature was a forged signature could have resulted only from passion and prejudice arising from incompetent and immaterial evidence in the record which should not have been considered by the jury, and that the court erred in not sustaining the motion to vacate judgment and set aside the verdict and for a new trial on the ground that the verdict was not supported by sufficient evidence.

The record is a long one. Both sides were represented by distinguished and able counsel. There is a sharp conflict in the testimony. On one side we find the evidence of witnesses that it was the genuine signature of Rickie Roberts. On the other, we have the evidence of witnesses that it was not her signature and was therefore a forgery. Both sides had expert witnesses, although an attack is made by the appellant upon the witness used by the appellee that he was not in reality an expert. However, he had had years of experience in examining signatures. He had 29 years of banking experience, dur-

ing which time he had examined signatures for the purpose of determining the genuineness of same. He had testified in other cases. He was competent by education, training, and experience to testify, and whether you called him an expert or not is not the important question. It is whether or not he was competent to testify. He testified that in his judgment it was not a genuine signature. He was subjected to a long cross-examination and explained his reasons why he believed it was a forgery. Appellant offered the testimony of an expert who testified that he believed it was a genuine signature. Thus, with such a conflict in the evidence, the question was for the jury that had the privilege of hearing these various witnesses testify and of seeing them on the witness stand. The jury returned a verdict for the appellee. There is sufficient evidence to sustain that verdict and this court will not interfere.

Appellant argues that the court erred in admitting in evidence Exhibit 19, which was a photographic enlargement of Exhibit N. The record shows that the witness Brown, who was an expert, had examined Exhibit 19 by means of a mechanical currency-detector and by the use of the microscope, and he testified that from a comparison of Exhibit N with the enlarged copy which was Exhibit 19, Exhibit 19 was a true and correct reproduction of the original in an enlarged form. In this day and age, when the art of lensmaking has arrived at a state of substantial accuracy, it would be legal quibbling to say that the magnifying process and the printing thereof on paper would tend otherwise than to disclose a correct reproduction. The court was correct in admitting the exhibit.

It is further argued that the court erred in admitting Exhibit F, which was the last will and testament of Rickie Roberts. The record shows that Exhibit F was first offered by the appellant. We quote:

"Exhibit 'F', consisting of five typewritten pages offered for the purpose of introducing in evidence the signatures to the will of Rickie Roberts and exhibit admitted."

It is true that it was offered for the purpose of the signatures to the will and that later the appellee offered the entire

will. There is no showing that the jury or any of its members did read or consider any part of the contents of the will, and no statement is made as to what, if any, of the particular words of the will itself might have been prejudicial if the jury had read the will instead of confining its consideration to the signatures. The will was introduced before the motion made by the appellant to withdraw certain defenses from the consideration of the jury. After the court had sustained the motion, there was no request on the part of the appellant to withdraw from the consideration of the jury the will. Under the circumstances set forth in this record, we do not believe that the admission of the will was prejudicial.

Appellant argues that he did not have a fair trial because of misconduct of appellee's counsel during the course of this trial. Said misconduct consisted of improper statements to the jury, wherein he referred to Floyd Roberts as "being the black sheep of the family," referred to the appellant as a "renegade," and made uncomplimentary remarks about the expert who testified. It would have been better if counsel had not made certain statements. The court, however, admonished counsel to stay within the record, and counsel apparently obeyed the instruction. At least, the record fails to show that he did not. In the heat of a trial attorneys often make uncomplimentary statements about witnesses or parties to a suit. It is unfortunate that these things occur, but it is hard to believe that they have any effect upon an Iowa jury of men and women who have listened to the evidence of the witnesses condemned and have seen them on the witness stand when they have testified.

Some other errors are argued, all of which have been given consideration. The trial was a long one. The case was well tried. The distinguished and able trial court instructed the jury in a concise manner upon the issue which was for its determination. The jury, after deliberation, returned a verdict for the appellee. There is evidence to support that verdict. It necessarily follows that this case must be, and it is, affirmed. —Affirmed.

BLISS, C. J., and SAGER, HALE, GARFIELD, WENNERSTRUM, OLIVER, and MILLER, JJ., concur.